Phil S. Flemming (#014778)
YEN PILCH ROBAINA & KRESIN PLC
6017 North 15th Street
Phoenix, Arizona 85014
Telephone: (602) 682-6450
Facsimile: (602) 682-6455
psf@yprklaw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Courtney Cochran, | No. |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| Highgate Hotels, L.P., | |
| Defendant. | **(Jury Trial Demanded)** |

Plaintiff Courtney Cochran ("Ms. Cochran"), by undersigned counsel, for her Complaint, alleges the following:

## NATURE OF ACTION

1. This is an action seeking money damages for violations of Title VII of the Civil Rights Act, 42 § 2000e-2 and the Arizona Civil Rights Act, A.R.S. § 41-1463, and for breach of contract, breach of the covenant of good faith and fair dealing, fraudulent misrepresentation and negligent misrepresentation arising out of Plaintiff's employment with, and wrongful termination of employment from Defendant, Highgate Hotels, L.P.

## PARTIES and JURISDICTION

2. Plaintiff, Courtney Cochran, is a United States citizen residing in Maricopa County, Arizona.

3. Defendant, Highgate Hotels, L.P, is a Delaware limited partnership, doing business in, among other locations, Maricopa County, Arizona.

4.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, specifically the Title VII of the Civil Rights Act, 42 U.S.C § 2000e-2 *et. seq*.

5.      Supplemental jurisdiction over Ms. Cochran's state law claims is proper pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), because the events giving rise to the claims occurred in this District.

7.      Ms. Cochran timely filed a charge with the EEOC on December 19, 2023, and received a Notice of Right to Sue on December 29, 2023.

**FACTUAL BACKGROUND**

8.      Ms. Cochran incorporates the previous allegations as though fully incorporated herein.

9.      Ms. Cochran commenced employment with Highgate in March 2022, when Highgate purchased the 123 hotels she managed while working with Wyndam Management.

10.      With Wyndam, Ms. Cochran was a District Vice President managing LaQuinta and Wingate properties.

11.      Before working for Wyndham, Ms. Cochran managed the same West District hotels with LaQuinta before Wyndham acquired those hotels.

12.      Ms. Cochran managed the West Coast hotels in a Vice President capacity or higher for twelve years and had twenty-six years of tenure at the time of her termination.

13.      When Highgate purchased the 123 hotels Ms. Cochran previously managed under Wyndam, she was assigned the role of Regional Vice-President.

14.      Highgate explained to Ms. Cochran and others who joined the company with the takeover that Highgate was in a time of expansion.

15.      During her tenure as Regional Vice-President with Highgate, Ms. Cochran was a high performer.

///

- 2 -

16. In 2022, during the pandemic, Ms. Cochran's hotels outperformed La Quinta properties in other regions.

17. After Highgate's acquisition of the 123 hotels in Ms. Cochran's region, the company sold approximately fifty of the hotels.

18. Ms. Cochran was made aware that Highgate was selling hotels within the portfolio because they were getting offers that were of a higher value than Highgate purchased them for.

19. In approximately February 2023, a Regional Vice-President position held by Laura Niarhos was eliminated.

20. In a Zoom meeting on March 1, 2023, Ms. Cochran was notified that her Senior Vice-President position was being eliminated effective March 10, 2023.

21. During the Zoom meeting, also attended by Geri Williams-Fitz, Tom Poehailos, Deanna Mills, Ms. Cochran was told that company downsizing was the reason for elimination of her Senior Vice-President role.

22. Ms. Williams-Fitz told Ms. Cochran that the elimination was not based on her performance, that Ms. Williams-Fitz would give her a great recommendation letter and that she could apply for other roles in the organization.

23. Ms. Williams-Fitz also told Ms. Cochran that there were no Vice-President or above level positions available at the time.

24. After the meeting, Ms. Cochran received an Employment Release Agreement "Agreement," under which she agreed to, among other provisions, a "General Release" in exchange for a "Severance Package" that included eight weeks of severance pay, "earned vacation" pay, reimbursement for COBRA premiums.

25. Ms. Cochran negotiated twelve weeks of severance pay instead of eight based on her twenty-six-year tenure.

26. Geri Williams-Fitz returned a new Agreement to Ms. Cochran that she had already signed.

///

27. Before signing the new Agreement, Ms. Cochran made notations in Paragraph 1 to memorialize Ms. Williams-Fitz's statement that Ms. Cocran's separation was based on "Senior Vice-President position eliminated within Highgate," and not her performance.

28. In Paragraph 5 of the Agreement, Ms. Cochran added that "Position SVP job eliminated per Geri Williams, no similar positions available within Highgate."

29. Ms. Cochran returned the signed agreement to Ms. Williams-Fitz.

30. Within a couple of weeks of her termination from Highgate, Ms. Cochran received text messages from her former General Managers and Area Managing Directors that Dave Mahan was promoted to her former Regional Vice-President role, over the same hotels she previously oversaw.

31. One General Manager stated that "it seems fishy."

32. Thereafter, Ms. Cochran was provided screen shots of messages sent by Mr. Mahan to her group of hotels.

33. The first screenshot was dated March 10, 2023, Ms. Cochran's last day with Highgate, in which Mr. Mahan said "I'm looking forward to connecting with you soon. I'll set up introductory calls early next week…"

34. At that time, he was still a Vice-President of Operations.

35. On March 15, 2023, Mr. Poehailos sent an email to the Highgate organization, including Ms. Cochran's former direct report, announcing that the company was shifting to a new era, and that it was a time of celebration after the acquisition of the La Quinta portfolios and the Highgate Select Collection.

36. According to Mr. Poehailos, there was "room for elevation of our leaders across all brands," and that he was excited to announce multiple promotions and additions to the team.

37. Mr. Poehailos announced the promotion of Mr. Mahan to Senior Vice-President of Operations for the West Coast.

38. Derek Rodriguez was promoted to a Vice President of Operations position.

- 4 -

39.    Ms. Cochran and Mr. Mahan both reside in Arizona.

40.    Ms. Cochran has twenty years more experience than Mr. Mahan.

41.    Ms. Cochran has at least 16 years in regional roles, overseeing territories ranging in size from several states to the entire United States.

42.    From 2009-2011, Ms. Cochran had more than four hundred hotels reporting to her.

43.    Ms. Cochran has experience in a revenue management role overseeing hotels in half of the United States.

44.    Ms. Cochran was replaced by a less qualified male, only five days after she was terminated as part of an alleged position elimination.

45.    After Ms. Cochran retained counsel regarding Ms. Cochran's wrongful termination, on December 20, 2023, counsel for Highgate told Ms. Cochran that the Senior Vice-President role was not eliminated, and that only the single brand Senior Vice-President role was eliminated.

46.    This was the first time Ms. Cochran was told that she was terminated for lack of multi-brand experience.

47.    In fact, Ms. Cochran has multi-brand experience, having managed both the LaQuinta and Wingate brands.

**LEGAL BASIS FOR CLAIMS**

**<u>Claim 1</u>**

**Wrongful Termination under Title VII of the Civil Rights Act of 1964**

**and the Arizona Civil Rights Act**

48.    Ms. Cochran incorporates the previous allegations as though fully set forth herein.

49.    It is unlawful for an employer to discharge an employee based on, among other protected characteristics, sex. 42 U.S.C. § 2000-e2; A.R.S. § 41-1463.

///

///

50. A claim for discrimination based on sex, a plaintiff must establish that she belongs to a protected class, was qualified for the position, was subject to an adverse employment action, and that a male filled her position.

51. Ms. Cochran is a member of a protected class - female.

52. Ms. Cochran was qualified for the position of Senior Vice-President and was successfully performing in that role since March 2022.

53. Ms. Cochran was terminated from the Senior Vice-President role and replaced by a male.

54. As a result of the discriminatory termination under both the Federal and Arizona Civil Rights Acts, Ms. Cochran has suffered damages in an amount to be proven at trial.

## Claim 2

### Breach of Contract/Breach of the Covenant of

### Good Faith and Fair Dealing

55. Ms. Cochran incorporates the previous allegations as though fully set forth herein.

56. A valid contract requires a bargain in which there is a manifestation of mutual assent and consideration.

57. Ms. Cochran and Ms. Williams-Fitz negotiated and formed a valid Employment Release Agreement based on the representation that Ms. Cochran was not being terminated because of performance, but because the Senior Vice-President within Highgate was being eliminated.

58. Ms. Cochran ensured that Ms. Williams-Fitts' representation was memorialized by including a handwritten notation on the Agreement before she signed it.

59. Neither Ms. Williams-Fitts, nor anyone else at Highgate disputed the handwritten notations upon receipt of the Agreement signed by Ms. Cochran

60. Highgate breached the Agreement when, only five days later, it replaced Ms. Cochran's Regional Vice-President position with Mr. Mahan.

61. There is also an implied covenant of good faith and fair dealing in every contract that prohibits a party from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement. *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 490 (2002).

62. Good faith performance emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.

63. Highgate did not act in good faith when it enticed Ms. Cochran into accepting a severance package and release of claims based on the false promise that her position was eliminated and no other Vice-President or above positions were available.

64. As a result of Highgate's breaches, Ms. Cochran was damaged in an amount to be proven at trial.

### Claim 3

#### Fraud/Fraudulent Misrepresentation

65. Ms. Cochran incorporates the previous allegations as though fully set forth therein.

66. Fraudulent misrepresentation requires a false representation that is material, the speaker's knowledge of the falsity or the ignorance of the truth of the statement, the speaker's intent that the recipient act upon the false statement, the recipient's ignorance of the falsity of the statement and justifiable reliance on the statement and consequent injury.

67. Highgate represented that Ms. Cochran's Senior Vice-President position was being eliminated and that no other Vice-President or above positions available.

68. The statement was material in that it justifiably enticed Ms. Cochran to accept a severance agreement and release of all claims.

69. Five days later, Ms. Cochran learned of the falsity of the representations when Mr. Mahan was promoted to her former her Senior Vice-President role.

70. As a result of the fraudulent misrepresentation, Ms. Cochran accepted termination of her employment, did not apply for the other Senior Vice-President positions

that were clearly available at the time, and suffered damages in an amount to be proven at trial.

### Claim 4

### Negligent Misrepresentation

71. Ms. Cochran incorporates the previous allegations as though fully set forth herein.

72. Negligent misrepresentation occurs when one gives false information intended for the guidance of another who justifiably relied on the information thereby causing damages.

73. Ms. Cochran relied on representations made by Highgate regarding her termination and livelihood.

74. The representations were designed to entice Ms. Cochran to accept a severance agreement that would prevent her from exercising her legal rights under the law.

75. Ms. Cochran would not have signed the Agreement if she knew that Mr. Mahan would replace her Senior Vice-President role only five days later.

76. Had Ms. Cochran known of the misrepresentations, she would not have executed the Agreement, and would have immediately exercised all legal rights available for wrongful termination.

**WHEREFORE,** Plaintiff, Courtney Cochran requests Judgment against Defendant as follows:

      A.    for compensatory damages;

      B.    for punitive damages;

      C.    for attorneys' fees and costs;

      D.    for interest on any judgment from the date of entry of judgment until paid in full; and

      E.    for any other damages or remedies the Court deems just and reasonable.

///

DATED this 25th day of March 2024.

YEN PILCH ROBAINA & KRESIN PLC

By  /s/ Phil S. Flemming
Phil S. Flemming
Attorneys for Plaintiff Courtney Cochran

## DEMAND FOR JURY TRIAL

Plaintiff Courtney Cochran hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

RESPECTFULLY SUBMITTED this 25th day of March 2024.

YEN PILCH ROBAINA & KRESIN PLC

By  /s/ Phil S. Flemming
Phil S. Flemming
Attorneys for Plaintiff Courtney Cochran